**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated, <br><br>       Plaintiff, <br><br>    v. <br><br> SSM HEALTH CARE CORPORATION d/b/a SSM HEALTH, <br><br>       Defendant. | CASE NO. _____ <br><br> (Removal from: the Missouri Circuit Court Twenty-Second Judicial Circuit, Circuit Court for the City of St. Louis, 2322-CC01038) <br><br> Jury Trial Demanded |

**NOTICE OF REMOVAL**

SSM Health Care Corporation d/b/a SSM Health (SSM Health) removes this putative class action to federal court pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). In support of this removal, SSM Health provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

**NATURE OF THE CASE**

1.  On December May 25, 2023, plaintiff John Doe filed a Petition against SSM Health in the City of St. Louis Circuit Court, Missouri, Petition No. 2322-CC01038.

2.  SSM Health accepted service of the Petition on September 5, 2023, thereby making SSM Health's deadline for responding to the Petition or for removing the case to federal court October 5, 2023.

3.  This is a healthcare website privacy case. As Doe puts it: "This case arises from Defendant's intentional, reckless, and negligent disclosure of Plaintiff's and Class Members' confidential and private medical information to Meta Platforms." (Pet. ¶ 1.) According to Doe, this is because "Defendant's website (https://www.ssmhealth.com/) (hereinafter, the 'Website') contain[s] a well-known Facebook tracking pixel (the 'Pixel' or 'Facebook Pixel') that secretly

enables the unauthorized transmission and disclosure of Plaintiff's and Class Members' confidential medical information to Facebook." (*Id.*, ¶ 2.)

4.      Doe alleges that "Defendant regularly encourages Plaintiff and Class Members to use its digital tools, including the Website, to receive healthcare services." (*Id.*, ¶ 17.) Notwithstanding this fact, however, Doe alleges that "Defendant, however, failed in its obligations and/or promises by utilizing the Facebook Pixel on its Website as described further below, knowing that such technology would transmit and share Plaintiff's and Class Members' Private Information with unauthorized third parties." (*Id.*, ¶ 22.)

5.      Based on these allegations, Doe alleges that "Defendant breached its obligations in one or more of the following ways: (i) failing to adequately review its marketing programs and web based technology to ensure the hospital website was safe and secure; (ii) failing to remove or disengage technology that was known and designed to share web-users' information; (iii) failing to obtain the consent of Plaintiff and Class Members to disclose their PII and PHI to Facebook or others; (iv) failing to take steps to block the transmission of Plaintiff's and Class Members' PII and PHI through Facebook Pixels; (v) failing to warn or otherwise adequately disclose material facts to Plaintiff and Class Members; and (vi) otherwise failing to design, and monitor its website to maintain the confidentiality and integrity of patient PII and PHI." (*Id.*, ¶ 24.)

6.      Doe asserts seven counts against SSM Health under Missouri state law: for alleged breach of fiduciary duty (*id.*, ¶¶ 125-139); alleged breach of confidence (*id.*, ¶¶ 140-154); alleged unjust enrichment (*id.*, ¶¶ 155-160); alleged breach of implied contract (*id.*, ¶¶ 161-167); alleged invasion of privacy (*id.*, ¶¶ 168-182); an alleged cause of action under *Brandt v. Medical Defense Associates*, 865 S.W.2d 667 (Mo. 1993) (*id.*, ¶¶ 183-198); alleged violations of the Missouri

Merchandising Practices Act (MMPA) (*id.*, ¶¶ 199-223); and, finally, for alleged negligence (*id.*, ¶¶ 224-228).

7.     Doe seeks to represent a broad putative class of Missouri citizens in pursuing these claims, defined as follows: "All individual citizens of the state of Missouri whose Private Information was disclosed to a third party by Defendant SSM Health without advanced express written authorization or consent through the Facebook Pixel on Defendant SSM Health's website." (*Id.*, ¶ 111.)

8.     The petition in turn broadly defines the term "Private Information" to include any alleged "personally identifiable information ('PII') and protected health information ('PHI') (collectively referred to as 'Private Information') contained in the confidential communications between Defendant and its patients." (*Id.*, ¶ 3.)

## THE SSM HEALTH MYCHART PATIENT PORTAL

9.     One of the "digital tools" on SSM Health's website is the SSM Health MyChart patient portal. The below image shows a link that exists on SSM Health's homepage, ssmhealth.com, to this MyChart patient portal:



10.     If an individual visitor to SSM Health's website clicks on this link, he or she is then taken to the following welcome page, available at https://www.ssmhealth.com/mychart, where the individual can then access and log-in to his or her SSM Health MyChart patient portal account:



11.     Not only by necessary implication, but also on their face, Doe's claims are directly related to this SSM Health MyChart patient portal link. Specifically, Doe alleges that when he visited SSM Health's public website SSM Health allegedly "improperly disclosed the following confidential information to Facebook," including "Plaintiff's and Class Members' status as medical patients," and "Plaintiff's and Class Members' communications with Defendant through its Website." (*Id.*, ¶ 39(a), (b).)

12.     Doe alleges that SSM Health's alleged use of the Meta Pixel further "allowed Defendant and Facebook to secretly track and redirect patients' communications on Defendant's website and patient portal." (*Id.*, ¶ 53.)

13.     Doe alleges that a fiduciary duty exists as between SSM Health and himself and the putative class because "[a]s Defendant's patients and/or users of Defendants' website for medical treatment and/or medical providers, Plaintiff and Class Members placed their trust in Defendant

to protect the unauthorized disclosure of their Private Information to third parties." (*Id.*, ¶ 132.) Doe further alleges that "Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality of PHI Defendant created, received, maintained, and transmitted in providing medical services and treatment to Plaintiff and Class Members." (*Id.*, ¶ 192.)

14.     Doe alleges that SSM Health breached an alleged implied contract between the parties "by disclosing Plaintiff's and Class Members' Private Information to a third party, *i.e.*, Facebook, without first obtaining advanced express written informed consent." (*Id.*, ¶ 165.)

15.     For his invasion of privacy count, Doe further alleges that "Defendant's willful and intentional disclosure of Plaintiff's and Class Members' Private Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns." (*Id.*, ¶ 174.)

16.     Finally, for his negligence count, Doe alleges that "Defendant negligently incorporated the Pixel and/or other third-party tracking cookies into its Website and/or MyChart patient portal without understanding how the Pixel and/or other third-party tracking tools would transmit Plaintiff's and Class Members' Private Information without their consent." (*Id.*, ¶ 227.)

17.     Thus also, Doe alleges that "Plaintiff and Class Members have been harmed in an amount to be determined at trial by Defendant's implementation of the Pixel and/or other third-party tracking cookies into its Website and/or MyChart patient portal, which resulted in the transmittal of Plaintiff's and Class Members' Private Information without Plaintiffs and Class Members' consent." (*Id.*, ¶ 228.)

## GROUNDS FOR REMOVAL

**I.      Removal is Proper Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).**

18.      SSM Health removes this case pursuant to the federal officer removal Statute, codified at 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …." *Id.* § 1442(a)(1).

19.      The Supreme Court has directed that the federal officer removal statute is to be "liberally construed." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). To remove under the statute, a defendant must show (1) that it is a "person," that "acted under the direction of a federal officer," that "there was a causal connection between its actions and the official authority," and that "there is a colorable federal defense to the plaintiff's claims." *Graves v. 3M Co.*, 17 F.4th 764, 767 (8th Cir. 2021).

20.      These requirements are met here. As detailed further below, this case is properly removable under 28 U.S.C. § 1442(a)(1) because SSM Health is a person under the statute and acted under color of federal law in making the SSM Health MyChart patient portal available to its patients, and Doe's claims are for or relating to that action taken under color of federal law.

**A.      *The Meaningful Use / Promoting Interoperability Program***

21.      This federal action officially began in 2004. In 2004, "to provide leadership for the development and nationwide implementation of an interoperable information technology infrastructure to improve the quality and efficiency of healthcare," President George W. Bush first established "the position of National Health Information Technology Coordinator." *See* Exec. Order 13335, at pg. 702 (Apr. 27, 2004), *Incentives for the Use of Health Information Technology*

*and Establishing the Position of the National Health Information Technology Coordinator*, available at https://www.presidency.ucsb.edu/documents/executive-order-13335-incentives-for-the-use-health-information-technology-and.

22.     Under the Executive Order, "[t]he National Coordinator shall, to the extent permitted by law, develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." *Id.* at pg. 703 (*Section 3, Responsibilities of the National Health Information Technology Coordinator*.)

23.     In 2009, Congress codified the National Coordinator position through the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH Act), *see* 123 Stat. 115, 230 (2009): "There is established within the Department of Health and Human Services an Office of the National Coordinator for Health Information Technology (referred to in this section as the 'Office.' The Office shall be headed by a National Coordinator who shall be appointed by the Secretary and shall report directly to the Secretary." 42 U.S.C. § 300jj-11(a) (Office of the National Coordinator for Health Information Technology).

24.     Congress tasked the National Coordinator with certain federal duties through the HITECH Act, *see* 42 U.S.C. § 300jj-11(c)(1) ("**Duties of the National Coordinator**"), including to "update the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics with respect to the following: (i) The electronic exchange and use of health information and the enterprise integration of such information," 42 U.S.C. § 300jj-11(3)(A).

25.     The HITECH Act further required, as a duty for the National Coordinator, "**Collaboration**": "The strategic plan shall be updated through collaboration of public and private entities." 42 U.S.C. § 300jj-11(3)(B).

26.     From the outset, one important piece of this federal health information technology initiative was for individuals to have access to their health care records online. *See* TOMMY G. THOMPSON & DAVID J. BRAILER, MD, PHD, *The Decade of Health Information Technology: Delivering Consumer-centric and Information-rich Health Care*, at pg. e (July 21, 2004) (discussing a "Medicare beneficiary portal"); *id.* at Attachment 1, Off. of Personnel Mang't Rep. at 6-7 (July 2004) (discussing "MyAnthem," which "provides an easy way to help members gain more control over their health care benefits through secure access that's available at any time and from any place"); *id.* at Attachment 2, Veteran Affairs Rep., at 18 (July 15, 2004) (discussing "My HealtheVet – The Personal Health Record").

27.     To make this and other federal health information technology goals a reality, the HITECH Act allocated billions of dollars for the health care system to adopt and meaningfully use "certified health information technology." *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology).

28.     The following year, the Department of Health and Human Services implemented this Congressional enactment through the "Meaningful Use Program" regulations, which is now known as the Promoting Interoperability Program. *See* Vol. 75 Fed. Reg., No. 144, pg. 44314 (Jul. 28, 2010).

29.     The Meaningful Use regulations mandated that participants provide their patients with the ability to "view, download, and transmit" their health information online. *See, e.g.*, 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) ("Beginning in 2014, provide patients with the ability to

view online, download, and transmit information about a hospital admission."); *id*. at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are discharged from inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge").

30.     SSM Health acted pursuant to these Meaningful Use regulations in making a patient portal available to SSM Health's patients online (*e.g.,* Ex. A, Compl. ¶¶ 8-9, 52, 217-219, 233-235), and thus also acted under color of federal law for purposes of 28 U.S.C. § 1442(a)(1). As set forth above, the link to this MyChart patient portal is available at https://www.ssmhealth.com/mychart.

31.     Ongoing usage of the portal is necessary for SSM Health to meet the Meaningful Use criteria. SSM Health submits annual reports on SSM Health's involvement in the Meaningful Use / Promoting Interoperability program to the Center for Medicare and Medicaid Services (CMS). These reports are made specifically to meet federal requirements and include submissions regarding the SSM Health patient portal and SSM Health's patients use of the portal.

32.     The first two federal courts to analyze removal on these grounds agreed with this analysis. *See Doe, et al. v. UPMC*, 2020 WL 4381675, *7 (W. D. Pa. Jul.31, 2020), *interlocutory appeal denied*, 2020WL 5742685 (W.D. Pa. Sept. 25, 2020) ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct at issue in the Complaint."); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, *3 (N.D. Ohio Oct. 30, 2020), *appeal denied*, 2020 WL 7705713 (N.D. Ohio Dec. 14, 2020) (same).

33.     The other federal courts addressing the issue have since disagreed, including two members of this Court and one in an analogous website privacy complaint directly against SSM Health. *See, e.g., Doe v. BJC Health System*, 2023 WL 369427, at *4-5 (E.D. Mo. Jan. 10, 2023),

9

*appeal pending* Case No. 23-1107 (8th Cir., filed Jan. 19, 2023); *Doe v. SSM Health Care Corporation*, 2023 WL 5662099, at *4-5 (E.D. Mo. Aug. 22, 2023), *appeal pending* Case No. 23-3138 (8th Cir., filed September 20, 2023).

34.     Appeals from these cases remain pending, and no other appellate court has yet weighed in on the question, though other appeals are pending. *Mohr v. Trustees of U. of Pennsylvania*, Case No. 23-1924 (3rd Cir., filed May 24, 2023); *Heard v. Torrance Meml. Med. Ctr.*, Case No. 23-55345 (9th Cir., filed Apr. 14, 2023); *Martin v. LCMC Health Holdings, Inc.*, Case No. 23-30522 (5th Cir., filed July 28, 2023).

35.     SSM Health thus files this notice of removal not only because SSM Health believes that removal is appropriate under the facts alleged in Doe's petition, but also for protective purposes, with the Eighth Circuit and other appeals pending analyzing this question.

**D.     *Doe's Claims "Relate" to the SSM Health's Actions Taken Under Color of Federal Law.***

36.     Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for *or relating to*" the federal office. 28 U.S.C. § 1442(a)(1) (emphasis added). Prior to the 2011 amendment to the statute, removal was previously only properly where the defendant was being sued directly "for" the alleged action taken under color of federal law.

37.      As detailed in paragraphs 9-17 above, Doe's petition expressly alleges privacy violations under Missouri state law precisely when an individual clicks on the SSM Health My Chart patient portal link. This includes the specific allegation that SSM Health's alleged use of the Meta Pixel further "allowed Defendant and Facebook to secretly track and redirect patients' communications on Defendant's website and patient portal." (*Id.*, ¶ 53.)

38.     Moreover, the entire thrust of Doe's petition is that SSM Health used the Meta Pixel and other analytical tools on its website in order to better communicate with SSM Health's patients. These allegations are related to the Meaningful Use Program, which was not only directed at making sure not only that patients and their caretakers had access to their healthcare records online, but also that they actually used the patient portals.

39.     As the *UPMC* court held: "There is plainly a connection or association between [the health care provider's] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability." 2020 WL 4381675, at *6.

**E.     SSM Health Raises Colorable Federal Defenses to Doe's Claims.**

40.     The final requirement for removal under the Federal Officer Removal Statute is to raise a colorable defense. Here, there are at least three colorable federal defenses to the claims at issue here that satisfy this requirement. *First*, though not expressly identified, Doe alleges that SSM Health violated alleged duties under federal law. (Pet. ¶ 104.)

41.     When an alleged, and disputed, federal duty forms the basis for a plaintiff's alleged state law claims, then removal under 28 U.S.C. 1442(a)(1) is appropriate. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (holding that "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends upon federal law").

42.     As the Supreme Court held in *Mesa v. California*, 489 U.S. 121 (1989): "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose

other obligations that may shield the federal officer against civil suits." 489 U.S. at 130 (emphasis in original). "Both are equally defensive and equally based in federal law." *Id*.

43.    *Second*, SSM Health has a preemption defense to Doe's Missouri state law claims. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines).

44.    Under this precedent, a defendant cannot be held liable under state law for doing precisely what the federal government wants them to do—as applied here, not only making a patient portal available online to patients but also promoting the meaningful use of that portal. *See, e.g., Boggs. v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").

45.    *Third,* SSM Health will argue that the First Amendment is a defense to Doe's claims. In *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Supreme Court held that "*the creation and dissemination of information are speech within the meaning of the First Amendment*." *Id*. at 570 (emphasis added). Doe's petition challenges how SSM Health allegedly uses website analytical tools—which in turn both gather and disseminate information—to enhance SSM Health's ability to speak to the public generally through its publicly available website. (*E.g.,* Compl. ¶¶ 12, 77, 107.)

46.    As the Supreme Court has likewise held: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views,

today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1977)).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

47.     SSM Health satisfies all of the procedural requirements under 28 U.S.C. § 1446.

48.     SSM Health is filing this Notice of Removal within thirty (30) days of SSM Health's acceptance of service of Doe's petition on September 5, 2023. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

49.     SSM Health files this Notice of Removal in the United States District Court of the Eastern District of Missouri, because the State court in which the action is pending, the Circuit Court for the City of St. Louis, is within this federal judicial district.

50.     This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

51.     SSM Health has attached a copy of the state court documents that were served upon SSM Health prior to filing this notice of removal.  Upon filing this notice, SSM Health will also promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the circuit Court for the City of St. Louis.

## CONCLUSION

Doe's petition directly challenges practices and procedures SSM Health has taken acting under color of federal law in making health care records available to patients and their caretakers immediately online through patient portals, where Doe expressly challenges alleged privacy violations that occur when a SSM Health patient or their caretaker expressly click on that patient

portal link. Doe's petition is therefore appropriately removable to this Court pursuant to 28 U.S.C.

§ 1442(a)(1).

Dated: October 5, 2023

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ John D. Comerford

John D. Comerford
Adam J. Simon
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO  63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111
Email: jcomerford@dowdbennett.com
        asimon@dowdbennet.com

Paul Karlsgodt (CO # 29004)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

David A. Carney (OH # 0079824)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile:  (216) 696-0740
Email: dcarney@bakerlaw.com

*Attorneys for Defendant SSM Health Care Corporation
d/b/a SSM Health*

</div>

**CERTIFICATE OF SERVICE**

I certify that on October 5, 2023, I filed the foregoing *Notice of Removal* with the Court's

ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF

system.

/s/ John D. Comerford
*Attorney for SSM Health*